[No. D008251. Fourth Dist., Div. One. July 21, 1989.]

In re the Marriage of MICHELLE M. and VANCE G. JACKSON.
MICHELLE M. JACKSON, Respondent, v.
VANCE G. JACKSON, Appellant.

COUNSEL

Ernest P. Dewell for Appellant.

David E. Britton for Respondent.

---

OPINION

**KREMER, P. J.**—Vance Jackson appeals a supplemental judgment of dissolution of his marriage to Michelle. Vance contends the court erred in finding sums received under the uninsured motorist coverage provision of the parties' insurance policy constituted community estate personal injury damages under Civil Code section 4800, subdivision (b)(4).[1] We affirm the supplemental judgment.

I

FACTS

The parties married in 1980. During their marriage the parties bought an insurance policy from Fireman's Fund Insurance Company with $300,000 uninsured motorist coverage. The parties paid the premiums on the Fireman's policy from marital community earnings.[2]

In 1983 the parties were involved in an automobile collision in Santa Monica. Michelle suffered personal injuries in the collision.

In February 1983 the parties filed a personal injury complaint against Rice, the driver of the other car. The parties' lawsuit sought damages for Michelle's personal injuries and Vance's loss of consortium. Rice was uninsured.

Fireman's paid $85,000 directly to the medical providers for medical costs incurred by Michelle. Fireman's also issued a $225,000 check payable to Michelle and the parties' attorney. The attorney withheld $75,000 for fees. With the remainder of the proceeds the parties bought a residence and a 1948 MG automobile.

---

[1] All statutory references are to the Civil Code unless otherwise specified.

[2] We note the record does not contain the precise language of the uninsured motorist provision of the Fireman's policy.

The cause of action against Rice remains pending subject to Fireman's subrogation rights.

## II

### SUPERIOR COURT PROCEEDINGS

In 1986 Michelle petitioned to dissolve the parties' marriage.

In 1987 the court bifurcated the issue of marital status from the remaining issues. The court entered judgment of dissolution on the issue of status only.

In 1988 property issues were tried by the superior court. The issue before the superior court was whether the proceeds of the parties' uninsured motorist coverage and the property bought with such proceeds constituted community estate personal injury damages under section 4800, subdivision (b)(4).[3] After trial the court found: "The funds received in settlement of [Michelle's] personal injury claim against the [parties'] uninsured motorist coverage are community property." The court awarded to Michelle as her sole and separate property the insurance funds and the property bought with the funds, including the residence and the MG automobile. Vance appeals.

## III

### DISCUSSION

### A

■■■ The Legislature intended subdivision (b)(4) of section 4800 to be an exception to section 4800, subdivision (a)'s equal division mandate. (*In re*

---

[3] Section 4800, subdivision (b)(4), provides: "Community estate personal injury damages shall be assigned to the party who suffered the injuries unless the court, after taking into account the economic condition and needs of each party, the time that has elapsed since the recovery of the damages or the accrual of the cause of action, and all other facts of the case, determines that the interests of justice require another disposition. In such a case, the community property personal injury damages shall be assigned to the respective parties in such proportions as the court determines to be just, except that at least one-half of the damages shall be assigned to the party who suffered the injuries. As used in this subdivision, 'community estate personal injury damages' means all money or other property received or to be received by a person in satisfaction of a judgment for damages for his or her personal injuries or pursuant to an agreement for the settlement or compromise of a claim for the damages, if the cause of action for the damages arose during the marriage but is not separate property as defined in Section 5126, unless the money or other property has been commingled with other assets of the community estate."

*Marriage of Morris* (1983) 139 Cal.App.3d 823, 828 [189 Cal.Rptr. 80]; accord *In re Marriage of Jacobson* (1984) 161 Cal.App.3d 465, 474 [207 Cal.Rptr. 512].) "Community estate personal injury damages" under section 4800, subdivision (b)(4), are "a species unique to the Family Law Act; they are held as community property during marriage, but upon dissolution such damages are subject to special assignment rules. [Citations.]" (*In re Marriage of Devlin* (1982) 138 Cal.App.3d 804, 807 [189 Cal.Rptr. 1].) In *In re Marriage of Devlin,* the court held the fact the community used personal injury damage receipts to buy real property and a mobilehome did not remove the traceable proceeds from the scope of the statutory predecessor of section 4800, subdivision (b)(4).[4]

## B

■ Vance contends the Fireman's proceeds were community property subject to equal division in the parties' dissolution action because the parties' claim for personal injury damages against Rice remained pending and unliquidated. Vance cites *In re Marriage of Pinto* (1972) 28 Cal.App.3d 86 [104 Cal.Rptr. 371]. In *In re Marriage of Pinto* the court concluded " 'money or other property' must have been *received* by the spouse in satisfaction of a judgment or pursuant to an agreement for the settlement or compromise of his claim for personal injury damages before it will constitute 'community property personal injury damages' within the meaning of subdivision (c) of section 4800 of the Civil Code, and that an unliquidated claim or 'cause of action' for personal injury damages does not constitute 'community property personal injury damages' within the meaning of this section." (*Id.* at pp. 89-90, italics in original.) However, analysis of *In re Marriage of Pinto* does not resolve this case.[5] Although the lawsuit against Rice was pending, the parties here received from Fireman's sums for Michelle's personal injuries. The fact the claim against Rice remained pending did not preclude the court from determining the character of the Fireman's proceeds already received and the property purchased with such proceeds.

## C

■ The issue here is whether the court correctly determined the residence and car bought with sums received from Fireman's under the parties' uninsured motorist coverage constituted "money or other property received

---

[4]Subdivision (b)(4) was denoted subdivision (c) before a 1986 amendment making insignificant changes in statutory content.

[5]*In re Marriage of Pinto, supra,* 28 Cal.App.3d 86, was decided under earlier statutory language limiting "community property personal injury damages" to sums *received* for personal injuries. (*Id.* at p. 88.) In 1979 the statute was amended to include sums "received or to be received" for personal injuries. (Stats. 1979, ch. 638, § 1, p. 1970.)

or to be received by a person in satisfaction of a judgment for damages for his or her personal injuries or pursuant to an agreement for the settlement or compromise of a claim for the damages" under section 4800, subdivision (b)(4). At our request the parties supplied supplemental briefing on this issue.[6]

Asserting section 4800, subdivision (b)(4)'s definition of "community estate personal injury damages" does not "precisely and unambiguously" include proceeds from uninsured motorist coverage, Vance contends the court should have divided the Fireman's proceeds equally under the general rule of subdivision (a). Michelle contends subdivision (b)(4)'s intent is to protect the injured party, not to permit a windfall to the uninjured spouse "who may have contributed nothing more than a few dollars towards the uninsured motorist coverage." We conclude the court properly awarded Michelle the Fireman's proceeds and property bought with such proceeds.

Insurance Code section 11580.2 "has established as a matter of public policy that every bodily injury motor vehicle liability insurance policy issued or delivered in California *shall* provide for uninsured motorist coverage. [Citation.]" (*Waite* v. *Godfrey* (1980) 106 Cal.App.3d 760, 770-771 [163 Cal.Rptr. 881], italics in original.) Uninsured motorist coverage insures policyholders for all sums within statutorily designated limits which they "shall be legally entitled to recover as damages for bodily injury or wrongful death from the owner or operator of an uninsured motor vehicle." (Ins. Code, § 11580.2, subd. (a)(1).) ■ The purpose of mandatory uninsured motorist coverage is to "minimize losses to the drivers in California who are invovled through no fault of their own in collisions with financially irresponsible and uninsured adverse drivers [citation], and '[t]he effect of the statute [Ins. Code, § 11580.2] is to guarantee to an insured motorist the minimum financial responsibility of another motorist who has wrongfully inflicted personal injuries on him.'" (*Waite* v. *Godfrey, supra,* 106 Cal.App.3d at p. 771, citing *Firemen's Ins. Co.* v. *Diskin* (1967) 255 Cal.App.2d 502, 505 [63 Cal.Rptr. 177].) "[A] person injured by an uninsured motorist is entitled to collect from his own uninsured motorist carrier all damages which would be recoverable in a personal injury action against the uninsured motorist, to the extent of the loss payable limit of the uninsured motorist portion of the policy." (*Id.* at p. 771.) An insurer paying a

---

[6] An academic commentator has noted: "An interesting situation arises when the recovery is against the spouse's insurance company in an uninsured motorist action. The award may be traced to both the funds which purchased the policy (presumably community) or to the various portions [of] the personal injury award (loss of earnings, pain and suffering, etc.), yielding different classifications under either analysis." (Nakamura, *The Classification of Personal Injury Damages Under California Community Property Law: Proposals for Application and Reform* (1983) 14 Pacific L.J. 973, 986-987, fn. 38.)

claim under uninsured motorist coverage "shall be entitled to be subrogated to the rights of the insured to whom the claim was paid against any person legally liable for the injury or death to the extent that payment was made." (Ins. Code, § 11580.2, subd. (g).)

In *Waite* v. *Godfrey, supra,* 106 Cal.App.3d 760, the court held uninsured motorist proceeds received by a plaintiff injured by a hit-and-run driver should not be characterized as coming from a collateral source and were thus available to joint tortfeasor defendants as a setoff under Code of Civil Procedure section 877.[7] The court stated "there was ample evidence in the record now before us to show concurrent negligence on the part of the [unknown hit-and-run driver]. Although there was no special finding of that fact made by the trial court, a de facto finding to that effect was obviously made by Nationwide, plaintiff's insurance carrier, as indicated by its payment of $12,000 in settlement of plaintiff's uninsured motorist claim." (*Id.* at p. 768.) ▮▮ Similarly, Fireman's payment to Michelle in settlement of the uninsured motorist claim indicates Fireman's made a de facto finding of negligence by Rice. Such settlement was directly traceable to Rice's act and was paid to Michelle only because of the negligence attributable to Rice. (*Id.* at pp. 771-772.) Under these circumstances the injured party's insurer approaches issues of liability and damages in the same manner as the tortfeasor would have. Thus, the injured party's recovery under her uninsured motorist coverage mirrors that which would have been obtained from the tortfeasor.

The uninsured motorist coverage proceeds essentially constituted a statutorily mandated settlement of the claim for personal injuries. The court in *Waite* v. *Godfrey, supra,* 106 Cal.App.3d 760, held the fact payment was made under the plaintiff's uninsured motorist coverage instead of by the hit-and-run driver's carrier was irrelevant for purposes of Code of Civil Procedure section 877. We conclude for purposes of Civil Code section 4800, subdivision (b)(4), whether payment here came from Rice's carrier or the Jacksons' uninsured motorist coverage was similarly irrelevant.

In *Waite* v. *Godfrey, supra,* 106 Cal.App.3d at page 769, the court noted tort damages are generally awarded for the purpose of compensating the plaintiff. The court stated: "This principle finds equal application in cases involving multiple tortfeasors who are found to be jointly and severally liable for a single wrong. Only one complete satisfaction is possible, and, if partial satisfaction is received from one, the liability of the others will be

---

[7] Code of Civil Procedure section 877 in relevant part provides a good faith release of one joint tortfeasor "shall reduce the claims against the others in the amount stipulated by the release, the dismissal or the covenant, or in the amount of the consideration paid for it whichever is the greater. . . ."

correspondingly reduced. [Citation.]" The court in *Waite* noted if the hit-and-run driver's liability carrier had settled with the plaintiff, Code of Civil Procedure section 877 would clearly require reducing the verdict against other joint tortfeasor defendants by the amount of the settlement. (*Id.* at p. 769.) Similarly, if Rice's liability carrier had settled, the proceeds would clearly constitute "community estate personal injury damages" under Civil Code section 4800, subdivision (b)(4). Michelle should not fare differently merely because she "had the chance ill fortune" of involvement with an uninsured driver. (*Ibid.*) The agreement with the injured party's own insurer was the equivalent of a settlement with the tortfeasor. Accordingly, we conclude the sums received from Fireman's in settlement of the uninsured motorist claim constituted "community estate personal injury damages" under section 4800, subdivision (b)(4).

The fact community funds were used to pay the premiums on the Fireman's policy does not compel a contrary result. As noted by the court in *Waite* v. *Godfrey, supra,* 106 Cal.App.3d at page 773, "uninsured motorist coverage is not an item of protection in most instances which a member of the consuming public consciously seeks out and buys. [Instead] receipt of uninsured motorist proceeds more accurately results from the enlightenment of state policy than from the consequence of the insured's own thrift or providence." (*Id.* at p. 773.)

Further, interpreting Civil Code section 4800, subdivision (b)(4), to include sums received in settlement of the parties' uninsured motorist coverage is consistent with the statutory purpose. The statute "recognizes the special nature of community property personal injury damages." (*In re Marriage of Devlin, supra,* 138 Cal.App.3d at pp. 808-809.) As discussed above, the Legislature intended subdivision (b)(4) of section 4800 to be an exception to section 4800, subdivision (a)'s equal division mandate. (*In re Marriage of Jacobson, supra,* 161 Cal.App.3d at p. 474; *In re Marriage of Morris, supra,* 139 Cal.App.3d at p. 828.) ▪ Subdivision (b)(4) is "designed to assure that other than in exceptional circumstances, community property personal injury damages, or the bulk thereof, will be awarded to the injured spouse and that under no circumstances will the injured spouse receive less than one-half of such damages." (*In re Marriage of Morris, supra,* at p. 827.) Finally, as noted above, our interpretation of Civil Code section 4800, subdivision (b)(4), also comports with Insurance Code section 11580.2's purpose to benefit the injured party.

In summary, for the reasons stated we classify as community estate personal injury damages the recovery here under the uninsured motorist coverage even though such recovery is not specifically mentioned in section

4800, subdivision (b)(4). Accordingly, the court was free to divide such damages under the provisions of the statute.

## DISPOSITION

The judgment is affirmed.

Wiener, J., and Huffman, J., concurred.